# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9019 | **DATE** | 11/24/2004 |
| **CASE TITLE** | JAMES E. KNIGHT vs. SCHNEIDER NATIONAL CARRIERS, INC., | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

### MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' Schneider National Carriers, Inc. and Marjie Thompson's motion for summary judgment is denied. Defendant Schneider National Leasing, Inc.'s motion to dismiss is granted. Status hearing is set for 12/30/04 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | NOV 2 9 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | 39 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| LG | courtroom deputy's initials | | U.S. DISTRICT COURT | date mailed notice | | |
| | | | 2004 NOV 24 PM 1:51 | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAMES E. KNIGHT,                         )
                                         )
            Plaintiff,                   )
                                         )
      vs.                                )    No. 03 C 9019
                                         )
SCHNEIDER NATIONAL CARRIERS,             )
INC., SCHNEIDER NATIONAL                 )
LEASING, INC., and MARJIE                )
THOMPSON,                                )
                                         )
            Defendants.                  )

DOCKETED
NOV 29 2004

### MEMORANDUM OPINION AND ORDER

Plaintiff James Knight brought this action against Schneider National Carriers, Inc.,

Marjie Thompson (collectively defendants) and Schneider National Leasing, Inc., for injuries

he suffered after an accident that occurred on January 13, 2001. Defendants and Schneider

National Leasing have now moved for summary judgment. For the following reasons,

defendants' motion is denied and Schneider National Leasing's motion is granted.

### BACKGROUND

On the evening of January 12, 2001, Thompson wedged the tractor-trailer that she was

driving under a bridge located at approximately 2140 West 55th Street in Chicago. Thompson,

whom Schneider National Carriers hired and trained to drive commercial trucks, was out on

only her third trip and was on 55th Street because she took a wrong turn on her way to pick

up a trailer. Commercial vehicles are not allowed on that section of 55th Street, as indicated

by signs along the street. When Thompson approached the overpass, the bridge appeared low

to her, but she did not see a sign indicating the clearance height and continued driving until

she heard her truck hit the bridge (Thompson dep. at 40). The collision caused no injuries, and damage to the truck was not severe – the roof of the trailer bore the brunt of the impact and the only visible damage to the truck itself was a bent exhaust pipe (plf.dep. at 35-36; Thompson dep. at 25-26). Thompson attempted to contact assistance through her internal communication device, but the bridge blocked the signal. Eventually, Officers Thomas Simunjak and William Lee arrived at the scene and Thompson contends that they contacted a tow truck for her; however, neither officer states that he called for a tow truck (Thompson dep. at 41-42; Lee dep. at 35; Simunjak dep. at 41-42). As Thompson waited for the tow truck traffic on 55th Street was light and cars passed via the open lane to the left of the disabled truck.

Plaintiff, a former sergeant with the Chicago Police Department who is now retired, was called to the scene by a police dispatcher and he arrived sometime after 12:00 a.m. Upon arriving at the scene, plaintiff asked if Thompson had called a tow truck and she said that she had. According to plaintiff, it was his duty to ensure that the roadway was clear, but that it was not his responsibility to move the truck (plf.dep. at 63). After evaluating the situation, plaintiff told Thompson that she could extricate the truck herself by pulling out the kingpin – the device that holds the trailer to the truck – which would lower the trailer and allow her to back the truck out from under the bridge (plf.dep. at 46). Plaintiff knew this because he had more than twenty years experience driving tractor trailers and held a commercial driver's license. Plaintiff contends that Thompson said she did not know how to drop the kingpin and asked plaintiff if he could do it for her. Plaintiff agreed to help, and after Thompson removed the kingpin he backed the truck out from under the bridge. He then exited the truck and Thompson reinserted the kingpin. However, the truck still needed to be backed down 55th

Street and, according to plaintiff, Thompson again asked him for his help moving the truck, and he agreed (plf.dep. at 52). As before, plaintiff encountered no problem entering the truck. He claims that after backing up the truck for two blocks, and while the truck was stationary, he went to exit the truck but the door suddenly slipped out of his left hand, causing him to lose his balance (plf.dep. at 54-55). After the door flew out of his left hand, plaintiff's right hand slipped off the grab bar, which he asserts was loose, and without having a point of contact with either hand, he fell to the street, sustaining injuries. Plaintiff states that after he fell, he looked up and saw the door that slipped out of his hand was flat against the body of the truck (plf.dep. at 59).

Thompson recounts a different version of events leading up to the fall. She asserts that she told plaintiff not to pull the kingpin and to instead wait for the tow truck, as she thought plaintiff's suggestion was a dangerous procedure, and she also denies that she asked plaintiff to back the truck down the street (Thompson dep. at 52-56). Further, she contends that plaintiff fell from the truck after he moved it from underneath the bridge and that it was she who backed the truck down the street *(id.* at 58-60, 64-65). Thompson did not witness plaintiff fall from the truck *(id.* at 60, 62).

Plaintiff alleges that Schneider National Carriers failed to maintain and inspect the grab bar on the truck, failed to inspect and maintain a step on the truck, and that it failed to inspect and maintain the truck. Plaintiff levels the same charges at Schneider National Leasing. Plaintiff alleges that Thompson negligently allowed the truck to become wedged under the viaduct, failed to ensure that she was properly trained in operating the truck, failed to heed warning signs regarding the clearance height of the viaduct, failed to inspect and maintain the truck, and failed to ensure that it was safe.

Defendants base their motion for summary judgment on two theories. First, they claim

that the firefighter's rule prevents plaintiff from recovering for his injuries. Second, they

argue that there is no proximate cause between their conduct and plaintiff's injury. Schneider

National Leasing also moves for summary judgment, and it argues that it had no role in

training Thompson or maintaining the truck.

DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law." Fed R. Civ. P. 56(c). We do not make credibility determinations or weigh

evidence when ruling on a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986). Indeed, it is error to make credibility determinations at the summary-

judgment stage. Morfin v. City of E. Chicago, 349 F.3d 989, 999 (7th Cir. 2003). Our only task

is to decide, based on the evidence of record, whether there is any material dispute of fact that

requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). When

the evidence in the record shows that no such material dispute exists, we will grant a summary

judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If "the parties

present two vastly different stories . . . it is almost certain that there are genuine issues of

material fact in dispute." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir 2003). We review the

evidence in the light most favorable to plaintiff, the nonmoving party. Id.

Schneider National Leasing admits that it owned the truck that Thompson drove into

the bridge, but it stresses that it had no responsibility for its maintenance. It further

emphasizes that it had no role in hiring, training or supervising Thompson. Schneider

National Leasing has produced a written agreement that it leased trucks and equipment to Schneider National Carriers, who was required to perform all maintenance on the trucks, including the one operated by Thompson. Plaintiff does not dispute Schneider National Leasing's position and does not oppose its motion for summary judgment, which we grant.

Defendants argue that the firefighter's rule bars plaintiff from recovering for his injuries, but plaintiff contends that the rule is inapplicable. Adopted in numerous jurisdictions, the firefighter's rule finds its roots in the Illinois Supreme Court decision <u>Gibson v. Leonard</u>, 32 NE 182 (Ill. 1892). The rule "limits the extent to which firefighters or other public officers are allowed to recover for injuries incurred when, in an emergency, they enter upon an owner's or occupier's property in discharge of their duty." <u>Randich v. Pirtano Constr. Co.</u>, 346 Ill. App. 3d 414, 804 N.E.2d 581, 585, 281 Ill. Dec. 616 (Ill. App. 2d Dist 2004). In other words, public officers may not recover from those whose negligence caused the emergency that required their presence when their injuries were caused by that emergency. A simple illustration is helpful. A firefighter cannot sue the homeowner who negligently set a fire when that fire injured the firefighter. There is an important limitation to the rule in that it "permits a firefighter to recover for injuries that result from an act unrelated to the specific reason he was summoned to the scene." *Id.* at 586. Here, another example is instructive. When the firefighter is injured not by the fire but by a staircase that collapsed due to the homeowner's negligence, the firefighter has a tort action against the homeowner. *See* <u>Dini v. Naiditch</u>, 20 Ill. 2d 406, 170 N.E.2d 881 (Ill. 1960). Related to the independent-cause exception, is that the rule does not apply when the public officer's injuries are caused by willful and wanton misconduct. *See* <u>Randich</u>, 804 N.E.2d at 588-89. Nor does the rule bar a public officer's suit that is based on a products liability theory. *See* <u>Court v. Grzelinski</u>, 72

Ill.2d 141, 379 N.E.2d 281, 19 Ill. Dec. 617 (Ill. 1978). Despite its name, the rule also applies to

police officers. <u>Fancil v. Q.S.E. Foods, Inc.</u>, 60 Ill. 2d 552, 328 N.E.2d 538 (Ill. 1975); <u>Hedberg</u>

<u>v. Mendino</u>, 218 Ill. App. 3d 1087, 579 N.E.2d 398, 399, 161 Ill. Dec. 850 (Ill. App. 2d Dist.

1991). An important policy concern behind the rule is that the rule "attempts to balance the

competing concerns of not placing unreasonable burdens upon landowners from firemen

coming onto their property and of not undermining the general duty of landowners to exercise

reasonable care to keep the premises safe." <u>Hedberg</u>, 579 N.E.2d at 401.

Responding to defendants, plaintiff first argues that the firefighter's rule does not apply

because the plaintiff was not responding to an emergency. Plaintiff emphasizes that the

absence of an emergency is evidenced by the fact that the truck only blocked one lane and did

not impede traffic from flowing through the open lane, and that accident caused no injuries

and only minimal damage to the truck. This case illustrates the difficulty in extending the

firefighter's rule to police officers. The emergencies police officers encounter are much less

predictable than those faced by firefighters, which complicates the extension of the

firefighter's rule. *See generally*, David L. Strauss, *Where There's Smoke, There's the*

*Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 WIS. L. REV.

2031, 2044-47 (1992). When the firehouse alarm bell rings and the firefighters spring into

action, the fact that an emergency exists is obvious. In contrast, no such emergency is

apparent when we picture a police officer on her beat, but that situation changes quickly when

she observes a masked man sprinting from a bank with a gun in hand. For a police officer,

benign situations may suddenly escalate into emergencies, and it is entirely plausible that the

converse is true as well. Illustrating the complexity of a police officer's duties with respect to

the firefighter's rule is <u>Fancil v. Q.S.E. Foods, Inc.</u>, 328 N.E.2d 538. In <u>Fancil</u>, the court held

that the firefighter's rule barred recovery for a police officer who, while performing a routine security check of a grocery store, was shot and killed by burglars. A routine task suddenly escalated into a tragic emergency without warning. With these issues in mind, the disabled truck still qualifies as an "emergency" for the purposes of the firefighter's rule. If the scenario in Fancil, where there was no apparent danger, qualifies as an emergency, a truck wedged under a viaduct is also an emergency.

Plaintiff also argues that the rule only concerns premises liability and that it is therefore inapplicable. Defendants disagree and contend that Illinois courts have never limited the firefighter's rule to premises liability cases. The history and purpose of the rule, as well as cases interpreting the rule, all support plaintiff's position that the rule should not apply in this case.

As mentioned above, the rule intends to balance a landowner's duty to exercise reasonable care with the duty owed to firefighters who, in an emergency, "enter onto privately-owned property in discharge of their duty." McShane v. Chicago Inv. Corp., 235 Ill. App. 3d 860, 864, 601 N.E.2d 1238, 176 Ill. Dec. 540 (Ill. App. 5th Dist. 1992). Defendants cite Washington v. Atlantic Richfield Co., 66 Ill.2d 103, 361 N.E.2d 282, 5 Ill. Dec. 143 (Ill. 1977), to support their view that the rule applies beyond the premises liability context. But in Washington, the court phrased the issue before it in terms of premises liability, "[t]he question presented by this appeal is whether the liability of a possessor of land for injuries to a fireman extends to acts of negligence which cause a fire" (Id. at 283) and ultimately the court imposed the rule, barring the plaintiff firefighters from recovery. Those firefighters were injured in the course of fighting a fire started when the driver of a car who was at a gas pump tossed a match outside his car and ignited a pool of gasoline that had collected due to a defective shut-

off valve on the defendant's gas pump. Defendants focus on the stationary vehicle in Washington, and suggest that it indicates that the firefighter's rule is not limited to landowner/occupier liability cases. In doing so, defendants ignore the fact that the primary defendant in Washington was the owner and operator of the service station and that the plaintiffs alleged that defendant was liable because of the faulty gas pump that spilled the pool of gasoline. After viewing Washington properly, it is clear that defendants fail to take that case out of the landowner liability context. The Illinois Supreme Court emphasized the importance of that context when, two years after Washington, it decided Court v. Grzelinski, 379 N.E.2d 281, which explicitly limited the firefighter's rule to landowner liability cases.

Defendants write that nowhere in Grzelinski "did the court hold that the fireman's rule is limited to traditional premises liability cases." We cannot, however, square that contention with the plain language of the case, which states that "[d]efendants attempt to extend the 'fireman's rule' beyond its limited context of landowner/occupier liability. The rule cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting." *Id.* at 284. The court removed all doubt when it stated, "we reject the opportunity to extend the 'fireman's rule' beyond its limited context of landowner/occupier liability." *Id.* at 285. In support of that conclusion, the court discussed the rule's genesis, at the heart of which is the duty of care that a landowner owes to a firefighter. *Id.* at 283-84.

Cases after Grzelinski follow its perspective that the firefighter's rule belongs in the premises liability context. In Randich the court echoed Grzelinski when it wrote:

> The fireman's rule rests not merely upon the recognition that the risk of injury
> is inherent in firefighting, but upon a policy consideration that limits the duty
> of an owner or occupier. Thus, because the rule's grounding is found in a

> compromise of rights between firemen and owners or occupiers, the rule cannot
> be expanded beyond its limited context of landowner/occupier liability.
> (Citations omitted.)

Randich, 804 N.E.2d at 589. Defendant cites Randich to support its position that the rule

applies outside of the premises liability context, but Randich did not lift the traditional limits

on the rule. In that case the defendants were contractors who punctured a gas main, which

later caused injuries to plaintiff, an emergency medical technician who was called to the scene

of the accident. The court applied the firefighter's rule and limited the plaintiff's recovery.

The contractors prevailed under the rule, even though they were not landowners, because the

court viewed their services as benefits to the easement-holder, which placed them on the same

footing as the easement-holder. *Id.* at 423-24. In Fancil, the court provided additional

evidence that the rule is limited to the landowner liability context when it relied on sections of

the Restatement (Second) of Torts located in the chapter entitled, "Liability for Condition and

Use of Land." Fancil, 328 N.E.2d at 540-41. In Martin v. Chicago Transit Authority, 128 Ill.

App. 3d 837, 471 N.E.2d 544, 546, 84 Ill. Dec. 15 (Ill. App. 3d Dist. 1984), the court observed

that in Illinois the fireman's rule "has been limited to the context of landowner/occupier

liability." Additionally, Duncan v. Rzona, 133 Ill. App. 3d 184, 478 N.E.2d 603, 88 Ill. Dec. 288

(Ill. App. 2d Dist. 1985), as explained by Horn v. Urban Inv. & Dev. Co., 166 Ill. App. 3d 62,

519 N.E.2d 489, 493, 116 Ill. Dec. 597 (Ill. App. 2d Dist. 1988), further illustrates that Illinois

courts limit scope of the firefighter's rule to cases in which the plaintiff is injured on the

premise of the landowner/occupier. These unambiguous formulations of the rule supercede

any implications to the contrary expressed in a trio of cases, all decided before Grzelinski, in

which the courts applied the firefighter's rule to bar recovery of firefighters injured while

fighting a fire caused by a train derailment on June 21, 1970, in Crescent City, Illinois. *See*

Erickson v. Toledo, Peoria & Western R.R. Co., 21 Ill. App. 3d 546, 315 N.E.2d 912 (Ill. App. 1st Dist. 1974); Marquart v. Toledo, Peoria & Western R.R. Co., 30 Ill. App. 3d 431, 333 N.E.2d 558 (Ill. App. 3d Dist. 1975); Young v. Toledo, Peoria & Western R.R. Co., 46 Ill. App. 3d 167, 360 N.E.2d 978, 4 Ill. Dec. 715 (Ill. App. 3d Dist. 1977). We find that the firefighter's rule does not apply to the facts before us.

There is yet another reason why the firefighter's rule does not bar plaintiff from recovering. The negligent acts that allegedly caused plaintiff's injuries were independent of the alleged negligence that caused Thompson to drive her truck into the viaduct. Courts have consistently allowed a public officer to recover when his injuries are caused by negligence that is independent of the negligence that created the emergency requiring the officer's presence. *See* Smithers v. Ctr. Point Props. Corp., 318 Ill. App. 3d 430, 741 N.E.2d 1152, 1156, 251 Ill. Dec. 974 (Ill. App. 4th Dist. 2000) ("We have consistently limited recovery to those instances where the landowner/occupier breached his duty of care by failing to keep the premises safe so as to prevent injury to firemen resulting from causes *independent of the fire*."); Randich, 804 N.E.2d at 585; Washington, 361 N.E.2d at 285. For example, in Hedberg v. Mendino, the court did not apply the firefighter's rule when the plaintiff, a police officer, was on the defendant's property investigating a call about a prowler and was injured when he tripped on a defective sidewalk. The court concluded that the defective sidewalk was attributable to negligence that was independent of the reason the plaintiff was on the scene, "Plaintiff was on the property to investigate a prowler and not to investigate the sidewalk." Hedberg, 579 N.E.2d at 400.

Plaintiff alleges that defendants failed to inspect and maintain the truck and also neglected to ensure that the truck was in a reasonably safe condition. He also claims that Thompson was negligent because she failed to ensure that she was trained and able to free her

truck from the viaduct and back it down the street. These allegations focus on negligence that is distinct from the alleged negligence that caused the collision with the bridge. Plaintiff claims that the collision resulted from Thompson's lack of reasonable care and failure to heed warning signs along 55th Street. Thus, the negligence that led to plaintiff's fall is distinct from the negligence that led to Thompson's collision with the viaduct.

Additionally, the alleged dangers that caused plaintiff to fall from the truck were not inherent to the emergency that required his presence. When confronting an emergency, public officers assume the risks associated with that situation, but they do not assume hidden dangers not inherent in those emergencies. Hedberg, 579 N.E.2d at 399. Dangers that are not inherent are those "that might be faced by an ordinary citizen." McShane, 361 N.E.2d at 865. Plaintiff asserts that Chicago Police Department procedure mandates that when large vehicles are disabled, it is the responsibility of the vehicle's operator, and not the police officer, to move the vehicle (plf.dep. at 37). Consistent with that procedure, plaintiff states that he did not arrive at the scene with the intention of moving the truck (plf.dep. at 62). We recognize that Thompson's version of events is quite different in that she depicts plaintiff as eager to move the truck, and states that she was reluctant to have plaintiff climb into the cab. For this motion we credit plaintiff's version and do not make credibility determinations. Payne, 337 F.3d at 770.

Based on plaintiff's representation of police procedures, moving the truck was beyond the scope of his official duties. When plaintiff moved the truck, he acted as an ordinary citizen rather than a police officer. He knew how to drive the truck because of extensive trucking experience that was independent of his job as a police sergeant and any training he received through the police department. Moving the truck was uncommon and unrelated to his job,

and was thus independent of investigating Thompson's collision with the bridge. In contrast, in Smithers, where the plaintiff firefighter was injured when he slipped on ice during an investigation of a water alarm at a warehouse, the court wrote that "[t]he facts indicate that plaintiff was aware of the ice upon which he fell, that this was not something that was uncommon in his profession or in his responsibilities as a firefighter, and that this injury was not independent of the emergency he was investigating." Smithers, 741 N.E.2d at 1158. For the firefighter's rule to apply, the risk must be inherent to the occupation. Fancil, 328 N.E.2d at 541. The risks here – the allegedly defective grab bar, step and broken catch – were not inherent to plaintiff's job because moving the truck was beyond the scope of that job. Any citizen exiting the truck would have faced those dangers. Further, plaintiff's injury was classified as an "on duty" injury, as opposed to an "in the performance of duty" injury. Plaintiff explains that the "on duty" distinction applies when the injury happens during any normal conduct, but that the "in the performance of duty" classification applies only when the injuries occur during police activity. Defendants do not dispute that distinction, which shows that plaintiff, for the purpose of the firefighter's rule, acted more as a citizen than a police officer.

The history of the firefighter's rule, its underlying policies, the limitations to premises liability cases placed on it, the independent-cause exception, and the fact that plaintiff claims he acted beyond the scope of his occupation, all convince us that the firefighter's rule is no bar here. That conclusion is consistent with the "current trend in the law [that] favors amelioration of the harsh effects of the rule." Randich, 804 N.E.2d at 588.

But defendants still have one arrow left in their quiver. Echoing arguments they marshaled in an earlier motion to dismiss, defendants now assert that plaintiff cannot establish

that their alleged negligence proximately caused his injuries. When we denied defendants'

motion to dismiss, we observed that proximate cause is a question of fact typically reserved for

the jury and concluded that "it is possible for a reasonable jury to find that plaintiff's injuries

were a reasonably foreseeable consequence of defendant's alleged negligence." Knight v.

Schneider National Carriers, Inc., 2004 U.S. Dist. LEXIS 11521, *5-6; 2004 WL 1427109 (N.D.

Ill. 2004). Defendants now argue that plaintiff cannot establish proximate cause because he

can only speculate that something was wrong with the door, and that Thompson's negligence

only created a condition that caused plaintiff's injuries. Defendants state that no witness in

this case can testify as to what caused plaintiff to lose his grip on the driver's door. To support

their argument, defendants analogize this case to Kimbrough v. Jewel Co., Inc., 92 Ill. App.

3d 813, 416 N.E.2d 328, 48 Ill. Dec. 297 (Ill. App. 4th Dist. 1981). In Kimbrough the plaintiff

slipped and fell as she was exiting the defendant's store. The court granted summary

judgment for the defendant because the plaintiff did not know how she fell, did not know of

any defect in the ramp on which she fell, did not know if she slipped on something, and did not

look at the ramp before or after she fell. When he described how he fell from the truck,

plaintiff mentioned that he did not know how the door slipped out of his hand or what caused

the door to move against the side of the truck (plf.dep. at 58-59). Focusing on that testimony,

defendants assert that they are entitled to summary judgment under Kimbrough.

In response to defendants' arguments, plaintiff details how he fell, emphasizing that the

door slipped from his hand, that he lost his grip on the grab bar, which he asserts was loose,

and that after he fell he looked up and saw the door was flat against the truck, which he claims

shows the catch was defective. To bolster that last point, plaintiff references maintenance

records from Schneider National showing that repair work was done to the driver's side door

of Thompson's truck on January 13, 2001, the day plaintiff fell. Those records indicate that the driver's door was fixed and the door catch repaired. The records appear to be evidence of post-remedial measures, and defendant correctly argues that on summary judgment we do not consider inadmissible evidence. *See* Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). Under Federal Rule of Evidence 407 "evidence of subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." But the maintenance records do not play a role in our decision, and we need not determine their admissibility. Plaintiff has established a genuine factual dispute without those records.

Defendants' statement that no witness can testify as to how plaintiff fell ignores plaintiff, who can testify why he lost his grip. Plaintiff contends that the door flew out of his hand and rested flat against the truck, which indicates that the catch failed to engage or was broken (plf.dep. at 59). Plaintiff also states that the grab bar was loose (*id.* at 60). According to plaintiff, Thompson, and the other officers on the scene, the collision with the viaduct damaged the roof of the trailer and the exhaust pipe only, which means that any damage to the door and grab bar existed before the collision. The details of the fall that plaintiff has provided overcome his moments of uncertainty and also distinguish this case from Kimbrough. In that case the plaintiff never stated that there was a specific cause for her fall, but here plaintiff points to identifiable defects – the faulty door and the loose grab bar. Thus, unlike the plaintiff in Kimbrough, who did not know if her foot touched grease spots on the ramp and "had no idea why she fell" (Kimbrough, 416 N.E.2d at 331), plaintiff is clear that he contacted the allegedly defective parts he contends caused him to fall.

When we join plaintiff's testimony with his allegations that defendants failed to ensure

that the truck was in a reasonably safe condition, a jury could find that there is a reasonable certainty that defendants' acts caused the injury and that it was foreseeable that defendants' alleged negligent acts resulted in plaintiff's injuries. Taken together, those findings amount to proximate cause. The dispute over how plaintiff fell requires that we deny the summary judgment motion. *See* Pauley, 337 F.3d at 773 ("Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied").

We also find no merit in defendants' argument that Thompson's negligence only created a condition that made plaintiff's injury possible. Defendants focus on the collision with the bridge, but plaintiff also alleges that they were negligent in failing to ensure that the truck was reasonably safe, and that alleged negligence created more than a mere condition – it caused him to fall from the truck. Ultimately, defendants' proximate cause argument still misses the mark.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied and Schneider National Leasing's motion is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Nov 24 , 2004.